**MISSOURI VALLEY, INC., Appellant,**

v.

**Juanita Lucille PUTMAN et al., Appellees.**

**No. 9145.**

Court of Civil Appeals of Texas, Amarillo.

Aug. 29, 1980.

Rehearing Denied Sept. 24, 1980.

Stokes, Carnahan & Fields, Thomas D. Farris, Richard E. Stokes, Jr., Amarillo, for appellant.

C. J. Humphrey, Amarillo, for appellees.

REYNOLDS, Chief Justice.

This appeal is from a judgment rendered in a wrongful death action decreeing recovery of exemplary damages upon jury findings of gross negligence. The determinative question is whether the evidential record supports the findings of gross negligence. We conclude that as a matter of law the evidence fails to show gross negligence as that term has been defined and limited by the Supreme Court. Reversed and rendered.

Haskell B. Putman, Jr., was an employee of Missouri Valley, Inc., an independent contractor engaged in constructing the Harrington Station # 2 power plant in Potter County for Southwestern Public Service Company. Putman was fatally injured during the course of his employment when he walked over an unbarricaded hole in an upper floor of the plant and fell some fifty feet.

Missouri Valley was a subscriber to the Texas Workers' Compensation Act. Actual damages for Putman's death are effected by workers' compensation benefits which were paid, and are being paid, to Putman's beneficiaries. This wrongful death action was brought by Putman's surviving widow, children and parents to recover from Missouri Valley exemplary damages as authorized by law where an employee's homicide is caused by the wilful act or omission or gross negligence of the employer.[1] Tex. Const. art. XVI, § 26; Tex.Rev.Civ.Stat. Ann. art. 4673 (Vernon 1952); Tex.Rev.Civ. Stat.Ann. art. 8306, § 5 (Vernon 1967).

In undertaking the construction of the power plant, Missouri Valley had instituted its own safety rules and orders to compliment those promulgated by the Occupational Safety and Health Administration. Missouri Valley's safety rules were required to be followed by its employees on penalty of dismissal, and each employee certified that he had read and agreed to follow OSHA's rules and regulations. Weekly safety meetings were held to instill safety consciousness in Missouri Valley's employees.

Putman was an experienced pipefitter. Three days before his death on Friday, 6 May 1977, he was a member of a crew of pipefitters working with a crew of boilermakers on level three some fifty feet above ground. The floor of level three was com-

---

1. Southwestern Public Service Company, owner of the premises, was also named as a defendant, but was nonsuited prior to trial.

posed of removable steel grating panels. On the Wednesday prior to the fateful Friday, a floor panel was removed, creating a three- to four-foot by six-foot hole, in order to hoist construction equipment and tools. Barricades of permanent steel railings were erected on the north and south sides of the hole, and the east and west sides of the hole were tied off by ¾-inch manilla rope. The ropes, which were placed by a carpenter foreman and his assistants, were taken down by the construction workers when equipment and tools were hoisted through the hole. The workers were "pretty good" about replacing the barriers, although from time to time the carpenter foreman would be called to replace the ropes.

On Friday morning when the construction workers arrived at the site, the hole was tied off. Shortly after eight that morning, the rope barrier was taken down by Roy Thomas, foreman of the boilermaker crew, aided by a member of his crew. The rope was then used in the process of raising blocks from a lower level to level three. Thomas, leaving the workers in the area of the unbarricaded hole, departed the site to obtain some equipment.

Eight to twenty minutes later, Putman walked through the area. He was looking upward, stepped into the hole and fell some fifty feet, sustaining injuries which resulted in his death.

The circumstances of and surrounding the occurrence were evinced by the testimony of some of Putman's fellow employees and Missouri Valley's officials. Thomas did not testify.

Denying Missouri Valley's motion for an instructed verdict, the court submitted the cause to the jury, defining some special issues so as to inquire about gross negligence. In regard to those issues and as material to the appeal, the jury found that Missouri Valley was guilty of gross negli-

gence in failing to provide Putman with a reasonably safe place to work, in removing the rope barrier, and in leaving the floor opening without replacing the rope barrier.[2] The jury fixed $50,000 as the amount of exemplary damages.

Overruling Missouri Valley's motion for judgment notwithstanding the verdict, the court rendered judgment on the verdict. The court decreed that Putman's surviving widow and two minor children recover from Missouri Valley the award of $50,000 as exemplary damages and apportioned the amount among them.[3]

Appealing, Missouri Valley presents thirteen point-of-error contentions. Considered first are the contentions that the court erred in failing to grant Missouri Valley's motions for instructed verdict and for judgment notwithstanding the verdict as there was no evidence of gross negligence on the part of Missouri Valley.

■ Under Texas law, the commission of a homicide "through wilful act, or omission, or gross neglect," subjects the wrongdoer to exemplary damages, Tex.Const. art. XVI, § 26, in addition to actual damages provided by law. Tex.Rev.Civ.Stat.Ann. art. 4673 (Vernon 1952); Tex.Rev.Civ.Stat.Ann. art. 8306, § 5 (Vernon 1967). In the cause at bar, there is no jury finding, nor any contention, that a wilful act or omission on the part of Missouri Valley caused Putman's death; so, if Missouri Valley is liable for exemplary damages, it is because the evidence affirmatively supports a finding of gross negligence.

In this connection, the early case of *Missouri Pacific Ry. Co. v. Shuford*, 72 Tex. 165, 10 S.W. 408 (1888), announced this rule:

Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or

---

2. The jury declined to find that Putman failed to keep a proper lookout. The jury also declined to find that the failure of Putman's fellow-employee pipefitters to replace the grate flooring or rope barricade was negligence.

3. The court found as a matter of law that Putman's surviving adult children and parents were not entitled to recover.

persons to be affected by it (emphasis added).

10 S.W. 411. Any contrary or conflicting rule has been overruled. *Bennet v. Howard*, 141 Tex. 101, 170 S.W.2d 709, 713 (1943). *Accord, Sheffield Division, Armco Steel Corporation v. Jones*, 376 S.W.2d 825, 828 (1964).

■ To concede that the evidence shows Missouri Valley was negligent in failing to provide Putman with a reasonably safe place to work, in removing the rope barrier, and in leaving the floor opening without replacing the rope barrier, is not sufficient to justify exemplary damages. To come within the rule, the evidence must go further and show affirmatively an entire want of care on the part of Missouri Valley which leads to the belief that the negligence was the result of a conscious indifference toward Putman's rights or welfare. *Bennett v. Howard, supra*, at 713.

■ The absence of care required to invoke the rule is not a matter of degree; there must be an entire want of care. *Sheffield Division, Armco Steel Corporation v. Jones, supra*, at 829; *J. S. Abercrombie Co. v. Scott*, 267 S.W.2d 206, 211 (Tex.Civ. App.–Galveston 1954, writ ref'd n. r. e.). A complete want of care is negated by the record before us. Missouri Valley has established a safety program complimentary to OSHA's rules and regulations, and implemented it by weekly safety meetings. There is testimony that barriers had been discussed generally in the safety meetings. There is no suggestion that the program, if observed, was inadequate as an appropriate safeguard against the type of accident which occurred; indeed, the evidence is that the rope barricade passed the OSHA inspections. Missouri Valley's implemented safety program reflected, at least, some care and concern for the safety and welfare of its employees. Where the record is uncontradicted that "some care" was exercised to avoid the accident which occurred, the evidence fails to meet the requirement of the rule and, thus, there is no basis for the recovery of exemplary damages. *Loyd Electric Company v. DeHoyos*, 409 S.W.2d

893, 896–97 (Tex.Civ.App.–San Antonio 1966, writ ref'd).

■ Moreover, even if it reasonably can be argued that Missouri Valley's safety program does not signify some care, the recovery of exemplary damages can be sustained only if the acts charged to Missouri Valley were the result of a conscious indifference to the right or welfare of Putman. Mere indifference is not enough; the indifference must be conscious, *Texas Pac. Coal & Oil Co. v. Robertson*, 125 Tex. 4, 79 S.W.2d 830, 831 (1935); that is, Missouri Valley's negligence must be so gross as to approximate a fixed purpose to bring about Putman's injuries. *Bennett v. Howard, supra*, at 712. The record does not support such a harsh conclusion.

■ Accepting that Thomas, who had the responsibility to make sure his crew abided by the safety rules, negligently failed to replace the rope barrier or have it or the floor grating replaced, evinces in itself no more than a mere indifference to a violation of the safety rules. Even the intentional violation of a statute enacted for protection against the very injury sustained cannot, without more, authorize a judgment for exemplary damages. *Jones v. Ross*, 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943). Here, there is neither testimony that Thomas was persistently careless so as to affirmatively show a conscious indifference to the welfare of the other workers, nor testimonial inference that Thomas' conduct in this instance approximated a fixed purpose to bring about Putman's injuries. The fact that Thomas should have foreseen and prevented Putman's fall is insufficient by itself to affirmatively show gross negligence as that term has been defined and limited by the Supreme Court. *Sheffield Division, Armco Steel Corporation v. Jones, supra*, at 828.

Given the fixed rule of gross negligence, we hold that as a matter of law there is no record evidence to support the findings of gross negligence. It follows that the trial court erred, first, in denying Missouri Valley's motion for an instructed verdict and,

second, in overruling its motion for judgment notwithstanding the verdict. Accordingly, Missouri Valley's first two points of error are sustained, and its remaining points are not addressed.

The judgment of the trial court is reversed. Judgment is here rendered that Juanita Lucille Putman, et al., take nothing by their action against Missouri Valley, Inc., for exemplary damages.