simons 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00493-CV







Joyce Ann Simons/City of Austin, Appellants



v.



City of Austin/Joyce Ann Simons, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 91-11267, HONORABLE JOSEPH H. HART, JUDGE PRESIDING







 A jury awarded appellee Joyce Ann Simons $200,000 in damages for injuries
sustained when a wooden partition fell on her at the Hancock Recreation Center, a facility owned
and operated by appellant City of Austin (the "City"). The trial court rendered judgment on the
jury verdict, and the City now appeals. We will affirm the judgment of the trial court.



BACKGROUND


 On August 28, 1989, Simons was struck on the back when a three-panel, wooden
partition constructed and used by the Hancock Recreation Center (the "Center") fell on her as she
sat at a nearby table. As a result, Simons suffered various injuries for which she sued the City
of Austin. At the time of her injury, Simons was a member and officer of the Capital Solos
Square Dancing Club, a non-profit organization that regularly used the Center for its square
dancing. Simons sued the City under a premises liability theory, alleging that the City negligently
failed to make the premises reasonably safe and failed to warn her of the danger posed by the
partition.

 In response to the City's motion for partial summary judgment, the trial court ruled
that Simons was a licensee in relation to the City of Austin. (1) A licensor has a duty not to injure
a licensee by wilful, wanton or gross negligence. See Lower Neches Valley Auth. v. Murphy, 536
S.W.2d 561, 563 (Tex. 1976). However, even when a licensor is not grossly negligent, if a
licensor has actual knowledge of a dangerous condition, and the licensee does not know of the
condition, the licensor has a duty either to warn the licensee or to make the premises reasonably
safe for the licensee. See id.; State v. Tennison, 509 S.W.2d 560, 562 (Tex. 1974); City of San
Benito v. Cantu, 831 S.W.2d 416, 421 (Tex. App.--Corpus Christi 1992, no writ). At trial, the
jury found that the City knew of the danger posed by the partition and that Simons did not know
of the danger. Accordingly, the jury found that the City violated its legal duty to Simons by
failing to make the premises reasonably safe and failing to warn her of the danger the partition
posed to her. The jury found the City 100% responsible for the accident and awarded Simons
$200,000 in compensatory damages.

 The City appeals the judgment in four points of error, claiming: (1) the evidence
at trial was legally and factually insufficient to prove that the City had actual knowledge of the
danger the partition posed; (2) the City should have been granted governmental immunity under 
the Texas Tort Claims Act; (3) the trial court abused its discretion when it submitted a question
to the jury regarding gross negligence and exemplary damages; and (4) there was insufficient
evidence to support the amount of damages awarded by the jury.



DISCUSSION


A.  Actual Knowledge

 In its first point of error, the City argues that the evidence at trial was legally and
factually insufficient to prove that it had actual knowledge of the danger the partition posed to
Simons. In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Best v. Ryan
Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990). We will uphold the finding if more than
a scintilla of evidence supports it. Crye, 907 S.W.2d at 499; Seideneck v. Cal Bayreuther
Assocs., 451 S.W.2d 752, 755 (Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951). The evidence supporting a finding amounts to more than a scintilla if reasonable minds
could arrive at the finding given the facts proved in the particular case. See Crye, 907 S.W.2d
at 499; Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); William Powers, Jr.
& Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515,
522 (1991). 

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d at 661; see also Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); see generally Powers & Ratliff, supra.

 The City claims that the evidence showing that it had actual knowledge of the
danger the partition posed to Simons amounted to no more than a scintilla of evidence and was
therefore legally insufficient to sustain the jury's verdict. Alternatively, appellant argues that the
partition was not a condition which posed an unreasonable risk of harm, and, as a result, the City
had no duty to warn Simons. We disagree.

 At trial Ms. Josie Nanyes, the custodian of the Center and an employee of the City
at the time of Simons's accident, testified that if the partition was not set up in a certain manner,
with the feet of the partition lined up in a particular way, the partition was dangerous because it
would fall over. Ms. Nanyes also testified that when she stored the partition, she leaned it up
against a wall to prevent the partition from falling over. Ms. Nanyes' testimony is direct evidence
that the City, through its employee, had actual knowledge of the danger posed by the partition. 
Simons also presented two expert witnesses at trial who testified that, in their professional
opinion, the partition was dangerous, and the City must have known of the danger. (2)

 Ms. Nanyes's testimony, coupled with that of the two expert witnesses, is more
than a scintilla of evidence to show that the City had actual knowledge of the partition's danger
and that the partition was, in fact, dangerous. Thus, the evidence is legally sufficient to support
the jury's verdict. See Crye, 907 S.W.2d at 499. Additionally, we are unable to say that the
evidence supporting the verdict was so weak as to make the verdict clearly wrong and manifestly
unjust. See Cain, 709 S.W.2d at 176. The evidence was therefore factually sufficient to sustain
the jury's verdict. We overrule appellant's first point of error.



B.  Governmental Immunity

 In its second point of error, the City contends that the trial court erred when it held
on summary judgment that the City was not immune from liability under the Texas Tort Claims
Act. Simons brought her action under a theory of premises liability. The Texas Tort Claims Act
specifically allows suits against the government for premises liability. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.021(2) (West 1986). The City argues that the design and construction of
the partition was a discretionary act, which makes it immune from liability for resulting injuries. 
See id. § 101.056. We disagree with the City's interpretation of the Texas Tort Claims Act.

 The discretionary act exemption to the Tort Claims Act only applies to policy
decisions. See Terrell v. State, 588 S.W.2d 784, 787 (Tex. 1979); Norton v. Brazos County, 640
S.W.2d 690, 692 (Tex. App.--Houston [14th Dist.] 1982, no writ); Christilles v. Southwest Tex.
State Univ., 639 S.W.2d 38, 41-42 (Tex. App.--Austin 1982, writ ref'd n.r.e.); Forbus v. City of
Denton, 595 S.W.2d 621, 623 (Tex. Civ. App.--Fort Worth 1980, writ ref'd n.r.e.). The situation
in Forbus v. City of Denton is analogous to the present case. In Forbus, the court held that the
decision to provide mattresses in jail cells was discretionary. Id. However, the decision as to
which particular type of mattress to use in the jail cells was an operational decision subjecting the
city to liability. Id. Likewise, the decision to use wooden partitions to hide unsightly gym
equipment stored in the Center might be considered a discretionary act. See City of El Paso v.
Ayoub, 787 S.W.2d 553, 554 (Tex. App.--El Paso 1990, writ denied). However, the actual design
and construction of the partition was an operational decision. See Forbus, 595 S.W.2d at 623. 
Simons's cause of action only attacked the condition of the partition, not the decision to construct
and use it. Thus, the City of Austin was properly denied governmental immunity under section
101.056 of the Texas Tort Claims Act. Accordingly, we overrule the City's contention in this
regard.



C.  Gross Negligence and Exemplary Damages

 As part of its second point of error, the City claims that the trial court erred by
failing to determine, before the jury's verdict, whether operation of the Hancock Recreational
Center was a governmental function, and thus governed by the Texas Tort Claims Act, or a
proprietary function not subject to governmental immunity. Also, in its third point of error, the
City complains that the trial court erred by submitting a question to the jury on gross negligence
and exemplary damages. Because these two issues are inter-related, we will discuss them
together.

 When considering these issues, it is helpful to understand the interplay between the
Texas Tort Claims Act and the doctrine of governmental immunity. Before the Texas Legislature
enacted comprehensive tort-reform laws in 1987, municipalities were liable, just like a private
citizen would be liable, for a number of different activities that Texas courts had concluded were
proprietary in nature. See City of Corsicana v. Wren, 317 S.W.2d 516, 522 (Tex. 1958) (Calvert,
J., concurring); John T. Montford & Will G. Barber, 1987 Texas Tort Reform: The Quest For A
Fairer and More Predictable Texas Civil Justice System, 25 Hous. L. Rev. 59, 121-28 (1987). 
However, in 1987, the Legislature declared that many of the municipal activities considered
proprietary under the old law would thereafter be deemed governmental. See Tex. Civ. Prac. &
Rem. Code Ann. § 101.0215 (West Supp. 1996). Thus, these changes significantly limited the
types of actions for which municipalities could be held liable. 

 The Texas Tort Claims Act is an exception to the general proposition that
government is immune from suit for personal injuries resulting from governmental functions. See
id. § 101.021. The Act lists certain governmental functions for which a municipality can be held
liable. See id. § 101.0215(a). However, the Act also places a cap on the amount of compensatory
damages a person can receive for injuries, even when a municipality is held liable. See id. §
101.023(c). More importantly in this case, the Act specifically bars exemplary damages. See id.
§ 101.024.

 At trial, the City contended that operation of the Center was a governmental
function under section 101.0215(a) of the Act. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.0215(a)(17) & (23) (West Supp. 1996). Section 101.0215(a) states that a municipality is
liable for "damages arising from its governmental functions, which are those functions that are
enjoined on a municipality . . . to be exercised by the municipality in the interest of the general
public . . . ." Id. Subsection 17 specifically holds municipalities, such as the City of Austin,
liable for the operation of "community, neighborhood, or senior citizen centers." Id.
§ 101.0215(a)(17). Subsection 23 states that municipalities are liable for operating "recreational
facilities." Id. § 101.0215(a)(23). The City argued that its operation of the Center falls within
the purview of these provisions. In other words, the City contended that, if it was not immune
from liability under the discretionary act exemption, it was only liable to the extent the Texas Tort
Claims Act made it liable for governmental functions under § 101.0215(a).

 Simons, on the other hand, argued that despite the changes created by tort reform,
the City's operation of the Center should properly be deemed a proprietary function. Section
101.0215(b)(2) states that "amusements owned and operated by the municipality" are proprietary
in nature and, thus, not covered by the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.0215(b)(2) (West Supp. 1996). Simons wanted the trial court to rule that the
operation of the Center was a proprietary amusement under section 101.0215(b)(2) because the
Act's prohibition on punitive damages would then not apply to her case against the City. See id.
§ 101.024. Thus, if operation of the Center could properly be labeled proprietary, Simons would
be entitled to a submission of both gross negligence and exemplary damages.

 The City responded that operating the Center was not the same as operating an
amusement. See, e.g., Hornsby v. Crystal Beach Park, 41 S.W.2d 82, 83 (Tex. Civ. App.--San
Antonio 1931, writ dism'd w.o.j.) (public amusement involves roller coasters, merry-go-rounds,
etc.). The City pointed out that the Center was used to teach various hobbies such as dance,
karate, gymnastics, and oil painting. It was also used by civic groups like Girl Scouts, Boy
Scouts, and the Big Brothers and Big Sisters organization. The City contended that the type of
activities that took place at the Center more clearly fit within the statutory provisions describing
governmental acts.

 Rather than deciding the issue before verdict, the trial court carried the decision
until judgment. In the charge to the jury, the trial court included a question on gross negligence
and a conditional question on exemplary damages. The jury returned a finding that the City was
liable under Simons's premises liability theory, but did not find the City grossly negligent. As
a consequence, the jury never considered exemplary damages. The City contends that the trial
court committed reversible error in two respects: (1) by deferring its ruling on the governmental
versus proprietary issue until after the verdict, and (2) by submitting a question on exemplary
damages to the jury because they are prohibited under the Tort Claims Act. We reject the City's
argument.

 The trial court is given broad discretion in deciding when to rule on a particular
issue and how to submit the case to the jury. See Clark v. Turner, 505 S.W.2d 941, 945 (Tex.
Civ. App.--Amarillo 1974, no writ). Because Simons had been determined on partial summary
judgment to be a licensee, submission of a gross negligence question was proper as an alternate
ground of liability. See Lower Neches Valley Auth., 536 S.W.2d at 563 ("a licensor is under the
duty of not injuring a licensee by willful, wanton or gross negligence . . . .") (emphasis added). 
Thus, only the submission of the exemplary damage question depended on the characterization of
the City's action as proprietary or governmental. (3) The trial court submitted the issue to the jury,
reasoning that the decision would not be necessary if the jury found no gross negligence and that,
if the jury did award punitive damages, the issue could be finally determined at the time of
judgment. The jury found that the City was not grossly negligent, and the trial court therefore
avoided making an unnecessary ruling. We hold that the trial court did not abuse its discretion. 
On the contrary, the court acted in accordance with sound notions of judicial economy by
submitting the case in a fashion that eventually made a difficult decision unnecessary.

 Even if the trial court abused its discretion, the City cannot show harm. The jury
determined that the City was not grossly negligent and therefore never reached the issue of
exemplary damages. The City argues that merely submitting the question to the jury was
inherently harmful to its case, but cites no authority for such a proposition. Because the jury did
not reach the exemplary damages question, any error by the trial court in submitting the question
was not calculated to, and probably did not, cause the rendition of an improper judgment. See
Tex. R. App. P. 81(b)(1); see Dion v. Ford Motor Co., 804 S.W.2d 302, 309 (Tex.
App.--Eastland 1991, writ denied). In Dion, which involved a situation similar to the one at bar,
the jury was given a conditional instruction which could only be reached if the jury first found the
answer to the question preceding the instruction in the affirmative. Because the jury answered the
question in the negative, it never reached the issue presented in the instruction. The court held
that even though the instruction was legally erroneous, there was no harm because the instruction
was not considered by the jury. Id. We agree with the Dion court's analysis and therefore
overrule the City's points of error in this regard.



D.  Evidence Supporting Damages

 In its final point of error, the City argues that there was no evidence or insufficient
evidence to support the damages awarded by the jury. The City attempts to discredit the jury's
award of $200,000 in damages by reciting the evidence presented at trial suggesting that the
accident did not cause Simons's injuries. For example, the City points to the impaired condition
of Simons's back before the partition struck her at the Hancock Recreation Center. Also, the City
argues that it was scientifically impossible for the partition to have struck Simons in such a way
as to cause her temporomandibular joint (TMJ) problems. In contrast, Simons offers a recitation
of the medical evidence supporting her contention that she was injured by the partition. Both
sides presented expert testimony regarding the cause and extent of Simons's injuries. The jury
heard all of the evidence and determined that the City was totally responsible for Simons's injuries
and that she was entitled to $200,000 in damages.

 The jury is the sole judge of the credibility of witnesses and is entitled to accept
or reject any testimony it wishes, as well as to decide what weight to give the testimony. See
Texaco, Inc. v. Pennzoil, Co., 729 S.W.2d 768, 791 (Tex. App.--Houston [1st Dist.] 1987, writ
ref'd n.r.e.), cert. dismissed, 485 U.S. 994 (1988); Rego Co. v. Brannon, 682 S.W.2d 677, 680
(Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). In the present case, the jury obviously
accepted the testimony of Simons's witnesses over the City's witnesses. In other words, the jury
found Simons's witnesses more credible than the City's witnesses or gave their testimony more
weight.

 After reviewing all of the evidence presented by both sides concerning Simons's
injuries, we conclude that there is more than a scintilla of evidence supporting the jury's verdict. 
Additionally, we cannot say that the jury's finding is supported by evidence so weak as to make
the verdict manifestly unjust. The evidence was sufficient to support a jury verdict in either
direction. The case turned on which witnesses the jury believed. We cannot substitute our
judgment when a jury verdict is grounded in sufficient evidence. See Cain, 709 S.W.2d at 176. 
We overrule appellant's fourth point of error.



CONCLUSION


 Having overruled each of appellant's points of error, we affirm the judgment of the
trial court.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: May 1, 1996

Publish

1. [1]  Simons argues in her independent appeal that she was an invitee rather than a licensee. 
Because we will affirm the trial court's judgment, we need not address the issue.
2. [2]  Although this expert testimony is circumstantial evidence of the City's actual knowledge,
the jury is allowed to consider circumstantial evidence when determining whether the City had
actual knowledge of the danger. See Torrez v. Standard Brand Paint, 795 S.W.2d 13, 14
(Tex. App.--El Paso 1990, writ denied); H.E. Butt Grocery Co. v. Pena, 592 S.W.2d 956, 959
(Tex. Civ. App.--Austin 1980, no writ).
3. [3]  We note that the Texas Supreme Court has held that when there is intentional, willful, or
grossly negligent conduct on the part of a municipality, exemplary damages may be
appropriate. See City of Gladewater v. Pike, 727 S.W.2d 514, 522-24 (Tex. 1987). Although
doubt has been cast on the continuing viability of the Pike decision, it has never been
specifically overruled. See Odessa v. Bell, 787 S.W.2d 525, 527-28 (Tex. App.--El Paso
1990, no writ).