NUMBER
13-00-697-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 

PINEWOOD HOMES, INC.,                                                   Appellant,

 

                                                   v.

 

SPIROS ZAGOURIS AND

MARY ZAGOURIS,                                                              Appellees.

 

    On appeal from the 357th District Court
of Cameron County, Texas.

 

                                   O P I N I O N

 

                     Before Justices Dorsey,
Yañez, and Chavez[1]

                                  Opinion by
Justice Chavez

 








Pinewood Homes, Inc. appeals from a
judgment awarding Spiros and Mary Zagouris $70,000 on a breach of contract
claim.[2]  Appellant contends the trial court erred in
awarding judgment to appellees because (1) the $70,000 awarded in damages was
less than the $96,000 appellees had agreed to pay on the contract, but never
did; (2) the evidence was insufficient to prove that the $70,000 was the
reasonable cost to repair any failures to comply with the contract; (3) the
evidence was insufficient to support the finding that Pinewood authorized
anyone to contract with the Zagourises to build them a house; (4) that Pinewood=s failure to complete the contract
was excused; and, (5) the percentage of pre-judgment interest was
incorrect.  We reverse and render.








In early 1993, the Zagourises, on
the recommendation of their friend George Bonas, requested that Mike Rabago
build them a house. Rabago subsequently submitted a written Aprobable cost@ proposal to the Zagourises in the
amount of $96,865.  After some
discussion, Rabago orally agreed to build the house for $96,000.  The Zagourises also agreed to pay Rabago $300
a week for ninety days to superintend the construction.  The proposal was on ARabago & Juarez@ letterhead and the construction
plans drafted by Rabago & Juarez showed Rabago & Juarez to be the
contractor.  During this time, however,
Rabago was telling the Zagourises that he worked for or was an officer of
Pinewood Homes.  When the Zagourises went
to the bank to sign the necessary documents to secure their interim financing,
Rabago went with them.  The mechanic=s lien note was made payable to
Pinewood Homes, Inc. and was secured by a mechanic=s lien in its favor.  Rabago endorsed the note and transferred the
lien to the bank, signing both documents as a vice-president of Pinewood Homes,
Inc. in order to secure the interim financing.

The building permit was obtained on
September 13, 1993 and the construction began. 
Rabago came by weekly to inspect the construction and to pick up his
weekly $300 check.  After the ninety days
expired in December and Mrs. Zagouris told Rabago she was giving him his last
check, Rabago[3]
stopped coming to the job site. There were numerous things wrong with the
construction of the house.  The garage
openings were too narrow, there were problems with the cabinetry, the stairs
were too narrow, the floors were bumpy, and many others.  According to Mr. Zagouris, he went with Bonas
to see Humberto Zamora, the president of Pinewood Homes in Harlingen.  Bonas was there to talk to Zamora about
something else.  This was the first and
only time that Zagouris ever met Zamora. 
Zagouris contends that he had an opportunity to say two things to Zamora
to explain to him that the house was unfinished and that there were problems with
the construction.  According to Zagouris,
Zamora agreed to fix the problems if they could be fixed and to finish the
home.  Zamora testified he never agreed
to do any such thing because he did not even know Zagouris was building a
house.  Zamora testified that he first
learned Zagouris was building a house when he got served with the
citation.  The Zagourises then hired the
subcontractor that had done the framing to finish the home.








The first draw on the interim
financing was on September 24, 1993. 
Although checks from the interim loan were made payable to Pinewood
Homes, the checks were deposited to the Zagourises personal account and Mrs.
Zagouris would use the monies to pay for materials, labor and Rabago=s fees.  A full accounting of this account was not
made during the trial.  Mrs. Zagouris,
however, testified that in addition to the $96,000 obtained on the bank loan,
she had spent another $100,000 to correct the deficiencies and finish the
home.  She could not fully explain how
all of this money was specifically spent, but offered that perhaps Rabago=s bid had been too low for the
construction of the three story bay home.

In its third issue, appellant
argues that there was no or insufficient evidence to support a finding that
Pinewood authorized anyone to agree to any contract to build the Zagouris
house.  In reviewing a no-evidence point,
we consider only the evidence and inferences tending to support the jury=s fact finding.  We disregard all evidence and inferences to
the contrary.  See Burroughs Wellcome
Co. v. Cye, 907 S.W.2d 497, 499 (Tex. 1995); Simons v. City of Austin,
921 S.W.2d 524, 527 (Tex. App.BAustin 1996, writ denied).  We will uphold the finding if more than a
scintilla of evidence supports it.  Crye,
907 S.W.2d at 499; Simons, 921 S.W.2d at 527.  Evidence amounts to more than a scintilla if
reasonable minds could arrive at the finding given the facts proved in the
particular case.  Crye, 907 S.W.2d
at 499; Simons, 921 S.W.2d at 527.








When reviewing a jury verdict to
determine the factual sufficiency of the evidence, we consider and weigh all of
the evidence.  See Plas-Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986).  When the
challenge is to a finding on which the prevailing party had the burden of
proof, we may reverse the judgment only if the challenged finding shocks the
conscience, clearly shows bias, or if the evidence supporting the finding is so
weak as to make the judgment clearly wrong and manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986); Cain, 709 S.W.2d at 176.  We may not, however, substitute our judgment
for that of the jury merely because we reach a different conclusion.  See Peco Constr. Co. v. Guajardo, 919
S.W.2d 736, 739 (Tex. App.B San Antonio 1996, writ denied); Westech
Eng=g, Inc. v. Clearwater Constr., Inc., 835 S.W.2d 190, 196 (Tex. App.BAustin 1992, no writ).

The first jury question, which was
answered in the affirmative, reads as follows:

Did Spiros Zagouris and Mary
Zagouris and Pine Wood Homes, Inc. agree that Pine Wood Homes, Inc. would build
a house for Spiros Zagouris and Mary Zagouris at Lots 125 and 126, Outdoor
Resorts?

 

Instruction

Pine Wood Homes, Inc.=s conduct includes the conduct of
another who acts with Pinewood [sic] Homes, Inc.=s
authority.

Authority for another to act for
Pine Woods, Inc., must arise from Pine Wood Homes, Inc.=s agreement that the other acts on
behalf of and for the benefit of Pine Wood Homes, Inc.

 








It is
undisputed that when Rabago submitted his Aprobable cost@ proposal to the Zagourises, he did
so on Rabago & Juarez stationary and that he represented himself as an
officer of Pinewood Homes.  The mechanic=s lien contract was between the
Zagourises and Pinewood Homes, Inc. and the Zagourises note was made payable to
Pinewood Homes, Inc.  The mechanic=s lien and note were transferred to
the bank over Rabago=s signature as a vice-president of
Pinewood Homes, Inc.  There is no other
evidence in the record that would tend to show that Rabago was authorized to
act on Pinewood=s behalf.  The plaintiffs made an attempt to show Zamora
knew of the construction and agreed to make the necessary repairs through
testimony regarding the meeting between Bonas and Zamora.  That testimony is somewhat sketchy.  Neither Bonas nor Zagouris testified that
they specifically complained to Zamora about Rabago.  While Rabago=s
name may have come up during their conversation as the person that was building
his house, the record does not show that Zagouris was complaining about Rabago
as Pinewood=s employee.  Zagouris testified that Zamora never told him
that Rabago was not his employee.  But if
Zamora was unaware that Zagouris was even building a house, or that Rabago was
representing himself as a Pinewood employee, there would be no reason for Zamora
to make any disclaimer.  While there is
ample undisputed testimony that Rabago was making false representations, there
is no evidence that anyone at Pinewood authorized Rabago to act on its behalf.

On appeal,
appellees argue that with full knowledge of the agreement between Rabago and
the Zagourises, Zamora, by agreeing to complete the house, in fact ratified the
agreement.  The problem with this
argument is that ratification was not alleged in the Zagourises= petition, nor was it tried by
consent.  See Land Title Co. of
Dallas, Inc. v. F.M. Stigler, Inc., 609 S.W.2d 754, 756 (Tex. 1980)
(ratification, absent trial by consent, is waived unless affirmatively
pleaded); Petroleum Anchor Equip., Inc. v. Tyra, 419 S.W.2d 829, 835
(Tex. 1967).  Additionally, no issue on
ratification was submitted to the jury. 
We hold that there was no evidence to support a finding that Pinewood
Homes, Inc. authorized anyone to enter into an agreement with the Zagourises to
build their house.








Zamora
denied Bonas and Zagouris= version of the meeting at which
appellants contend Zamora ratified the agreement.  Zamora testified that he had called Bonas to
meet with him concerning a charge that he, Bonas, had made to Pinewood=s account at Wicke=s Lumber in Harlingen.  On August 20, 1993, Bonas had charged to
Pinewood=s account, at Wicke=s Lumber, a window for a house he
was building in Brownsville.  When the
billing clerk at Wickes Lumber saw the bill the next day, he called Zamora to
verify that Bonas was authorized to charge on Pinewood=s account.  Zamora asked Bonas to meet with him about the
charge.  This was the meeting Bonas and
Zagouris testified about.  It was the
only meeting Zamora and Zagouris ever had. 
At the meeting, Bonas did not dispute that he had made the charge.  The meeting, however, took place the latter
part of August 1993.  Zagouris did not
begin construction of his home until September 1993 and Rabago walked off the
Zagourises= worksite in December.  It was impossible for Zagouris to discuss
with Zamora deficiencies in a house he had not even started to build.  Zamora further testified that he had never
built homes along the coast where the Zagouris home was located, and that
Pinewood did not construct homes, only commercial buildings.








Rabago
testified that he was not and had never been an officer, director, shareholder
or employee of Pinewood Homes, Inc. 
Although he and Zamora were compadres,[4]
Robago testified he had no authority to sign any documents as an officer of
Pinewood.  He also testified that
Pinewood had no knowledge that he had signed the note and mechanic=s lien at the bank with the
Zagourises.  Rabago further testified he
had agreed to help the Zagourises build their home at request of their nephew
and because he was out of work and needed the money.  He also contended that the Zagourises knew he
was not an officer of Pinewood when he signed off on the note and mechanic=s lien, but this was the only way
the interim loan could be obtained.  The
Zagourises, Rabago testified, were to be the general contractors.  Zamora acknowledged that Rabago had done
architectural work for Pinewood when he had been the successful bidder on a
job, but denied that Rabago had ever been an employee or officer of Pinewood
Homes, Inc.

Based on
the record before us, we hold that there was factually insufficient evidence to
support the jury=s affirmative response to question
number one.

We sustain
appellant=s third issue.  We need not address appellant=s remaining issues because our
ruling on issue three finally disposes of the case.  We reverse the trial court=s judgment and render judgment that
plaintiffs take nothing.

 

                                                                

MELCHOR CHAVEZ

Justice

 

 

 

Do not publish.  Tex.
R. App. P. 47.3.

 

Opinion delivered and filed this
the

29th day of August, 2002.

 











[1]Retired
Justice Melchor Chavez, assigned to this Court by the Chief Justice of the
Supreme Court of Texas pursuant to Tex.Gov=t Code Ann. '
75.002 (Vernon 1998).





[2] The Zagourises also
filed DTPA claims, but these were not submitted by the trial court.





[3] Mike A. Rabago, Jr.,
Individually and D/B/A Rabago & Jordan Juarez, Architectural Design Group
and Rabago & Juarez, Architectural Planners were also named as defendants
in the lawsuit. These defendants, however, were never served and did not
participate as parties during the trial.





[4] Zamora had been the
sponsor at the baptism of Robago=s son.